The next case we're going to hear this morning is United States v. Gaspar. Mr. Duesenberry, whenever you're ready, we'll hear from you. May it please the Court. Our contention that the district court's sentence of 188 months in Mr. Gaspar's case was procedurally unreasonable was not because the district court failed to explain the sentence. It was because the court's explanation was flawed. It was inadequate. It was inadequate because it failed to take into account perhaps the most salient, non-frivolous fact of mitigation. In the entire case, which is that Mr. Gaspar only became a part of this conspiracy because he was through coercion and duress by Mr. Moran. And I understand, Your Honor, that at some point in my argument, I will need to at least allude to information contained in the pre-sentence report. I don't necessarily need to discuss it in detail, but I do need to at least make reference to the fact that it exists and the information was available to the district judges prior to the sentencing process. So I was advised that it would be wise to notify the court in advance that that was the case. So just sort of as a general matter, it seems to me that privilege is yours because this pre-sentence report often contains information that maybe should not be public. But it seems to me if you choose to make it public to advance an argument, I don't see a problem with that, although my colleagues might. I do appreciate that, Your Honor. Thank you. We contend that the most salient mitigating factor in the case is that Mr. Gaspar only became a part of this conspiracy because of credible threats to him, to his family. While it's true that Mr. Gaspar approached Moran about the idea of helping his father, the matter arose entirely because of Gaspar's conversation with his father that dad who was in Mexico, who ran a restaurant in Mexico, was being harassed by Mexican cartel members. He along with other shopkeepers in the area were forced to pay tribute, wanted to see if his son could do something. But he mentioned it to his son. His son talked to Mr. Moran about it, mentioned it to Mr. Moran and left that conversation. Moran said he would look into it or he actually said he would take care of it. Mr. Gaspar left that conversation undoubtedly thinking that he had done everything he could do to help his dad. The point was that Gaspar's reason for approaching Moran in the first instance had nothing to do with the desire to establish any kind of an ongoing relationship with him, nothing to do about working for him or with him, and it certainly had nothing to do with Gaspar having an interest in working as a drug dealer. Let me tell you what I, I hear your argument and I understand the point you're making, but during sentencing this whole idea of why he got into drugs again was fully explained by you, basically talking about the threat to his father and the extortion. And in order to mitigate with respect to that he actually wanted to cooperate, but then he explained to the court, or you explained to the court, why he wasn't because of the high risk. And then the court later, when sentencing, saying, well, I understand that risk, what we're talking about, but it's, that risk is countered a little bit by the fact that Gaspar had been in drugs earlier in his life, so it wasn't totally pure, it wasn't totally an idea that he had just gotten into it. That's what I thought took the court's message to be, and so it seems to me that dialogue, there were two dialogues going on, one as to why he got involved, and the second is because methamphetamine isn't always, was this meth? Yeah, it was not always tested for ice, and the court recognized that. And so the minimum guideline range was 324 months, and based on those ideas, the court went down to 188 months. Now, where have I gone wrong on that? The length of the sentence, I think, is an independent question from whether the process used by the district court in arriving at that ultimate sentence was procedurally reasonable. The test, as I understand it, is that the court must, as part of its duty to subject the parties' arguments to rigorous adversarial testing and so forth, it must indicate in its sentence that it was not tested. In its findings, in its announcement of the sentence that it reached and its rationale for doing so, that it considered every non-frivolous argument in mitigation of the sentence. Well, I thought you just agreed with me. It considered the two main ones that you're arguing about, or the main one you're arguing about, as to why he got involved in drugs because of his father. And the second reason that the court moved, expressly moved, was because of the practice of not always testing for ice. And based on those two things, the court explained it was going down to 188. You asked for 120, and the court rejected that, basically saying this was not the first time he'd gotten into drugs. And so that seems to be the response to your argument that he got into this crime because of the threat, and that's all. And the court's saying, well, he got into this crime also. He'd been into drugs before. So that is a form of dialogue. You may not agree with it, but I have a hard time understanding where the court went wrong in doing that. You know, our position was not that he, because of his prior experience in drugs, this was somehow something new for him. Our point was that, but for the coercive tactics of Mr. Moran, but for the constant reminders after Moran makes a phone call to somebody in Mexico, and all of a sudden the harassment of Mr. Gaspar's father stops, Mr. Moran. You made that argument to the court in quite some detail, right? We did, but the court did not indicate in its findings that it gave any consideration to the coercion aspect of the mitigation argument. Can I ask you the two places that it strikes you as the strongest argument that the court did? So Judge Niemeyer alluded to it, but there's this statement towards the end of the sentencing hearing where the district court is sort of wrapping up and says that Mr. Gaspar's, quote, he was only doing this for the events that happened in 2022. Now, I agree, you could interpret that two ways, but why isn't one way to interpret that as an implicit rejection of the argument that this was only because he was coerced? Like, I only did this, I never would have done this if I hadn't been coerced. And then the court says, except that you were doing stuff like this before that. Why isn't that at least possibly understood as a rejection, at least of the full force of the argument that he only did this because someone coerced him to? I think that question rests on a flawed premise, which is that what he was doing before bore any meaningful resemblance to what he was called upon to do. But that's an argument the district court was wrong, substantively. Not that the district court didn't give you a reason, it's that you don't think the reason the district court gave is a good one. No, I think that what I'm saying is that what he had done before, which was a fraction involved, the largest quantity I believe he'd been involved with was something like less than eight grams of powder cocaine. Nothing on the order of magnitude of multi-kilograms of pure meth. Because of that vast difference, that qualitative difference, well, that quantitative difference essentially amounted to a qualitative difference. He never demonstrated a capacity to have access to that kind of drugs, much less a propensity to deal with it. But again, this all strikes me as an argument not about what the district court said, it's about whether the district court should have reached the conclusion that it did. So the other question is, so you had two main arguments, one was the ICE issue and one was the coercion issue. Those are broadly the two arguments. And I think I've done the guidelines calculation. Do you agree that if we remove the ICE issue, that gets the bottom of his guideline range down to 210 months? I do. Which means the sentence the district court gave him is below the guideline range, even if we accept your position on the ICE issue, right? Yes. Okay, so the district court did go below, like assuming that you win the ICE issue, the district court still went below his guideline, which it had to do based on something, right? I want to make sure I understand what the court is alluding to with the description of the ICE issue. Because it was really not an issue, the district court pretty much took that out of our hands. Sure, sure. And that would reduce the bottom to 210, and the ultimate sentence is lower than that even, right? That's correct. And so that had to have been based on something, right? Well, in fact, I think the district court gave us some guidance in that regard, because toward the end, and I don't have the page number right in front of me, but the court indicated that the matters that were discussed at the bench, I read that to say that that was influential in the courts going further from 210 down to 180. And then trying to be dealt with. Well, the other thing at the bench conference was the risk. He would have cooperated, but he was faced with this risk, this duress, this gang effort possibly that could retaliate against his father. That's what he was alluding to is why he didn't cooperate, right? That's right, and that was what I understood to be the district court's reason for going from 210 to 188. But which is another way of saying it had nothing to do with my argument about Mr. Gaspar having been coerced as an initial matter. Because if we look back at the record, the sequence of events were such that when Gaspar talks to Moran, Moran makes a phone call, the threats stop. Moran then approaches Gaspar and says, you know, I've done a favor for you, I need you to do a favor for me. Well, that was the point. That was the implicit threat. Because Gaspar knew he was dealing with someone who was, he knew that if Moran had the clout with the Mexican cartel that a phone call could make these threats that his father was experiencing disappear. If he told him no, a phone call could create problems for his father, for his family and for himself. You have some rebuttal left. Okay, Mr. Pryor. Good morning, Your Honor. This may please the court. Jake Pryor for the United States. This court should affirm the district court because sentencing the appellant 136 months below the bottom of the guidelines range was procedurally reasonable. The district court did not abuse its discretion in that sentence. The district court addressed the core premise that the appellant's actions were mitigated by the implicit threats to his family. The district court addressed that directly. Your Honors have mentioned that this morning already toward the end of the sentencing procedure. But I'd like to also back up a bit and talk about some other times the district court specifically addressed that very argument. First, in the position paper in the pre-sentence report, the court acknowledged both of those having read and received those. They contained that same argument as well, that the defendant entered into this arrangement due in part to these implicit threats to his family. The court adopted as findings of fact everything that was contained within the PSR. One of those things was a very lengthy explanation by the defendant in the acceptance of responsibility section in paragraph 23 of the PSR that went to this very issue. But then the parties go to the bench with the district court, discuss the matter as Your Honors have already heard this morning. The court later referenced that as far as considering that. This is the part where the court says, we had a bench conference and I considered the things that were said at the bench conference? That's what you're referring to? Yes, Your Honor, on two different occasions. I'm not sure that we've addressed that yet in the opening remarks here. What that was, was essentially the court saying, I've considered the 3553A factors, and she specifically made reference to the history and characteristics of the appellant and the nature and circumstances of the offense. Specifically named those out in addition to invoking section 3553A generally. But then she drilled in again even more specifically to address the family safety issue discussed at the bench. So that's Joint Appendix 143 through 145, and particularly at 145 on the family safety issue. So I don't think we've addressed that. Then as the court has addressed at the end of the sentencing hearing and very near toward the end of the sentencing hearing, that's when she goes again, the district court again makes reference to what was said at the bench. And what Your Honors have brought up already, emphasized that it took what was said at the bench into account. And I want to drill in on that amendment here as well. Judge Heightens essentially asked the appellant, well, if we take the methamphetamine impurity guidelines into account, that gets us down to 210. But we still went below that to 188. So what was it? Well, the court was clear there. It wasn't just that the district court addressed, or excuse me, took into account. The district court actually said took into account as part of the reduction. So not just I heard your argument, but I'm taking that into account. That is part of the reduction. So I am buying into what you're saying about this family safety issue, having been at least a part of what induced you to enter into this arrangement. However, that is undercut by your history involving drugs. So it's a matter of degree. That's what the distinction is here. It's a matter of degree. The court considered it, said I will credit you to an extent, and give you in part a reduction because of that family safety issue. However, in a direct logical counter to that mitigation argument, it points out, but your involvement with drugs came long before 2022. That is a direct logical counter to that argument that the appellant was induced to enter into this drug trafficking arrangement for the reason of implicit threats toward his family. Anything further? I do, Your Honor. I want to also address the thoroughness. I do think it's important to note the thoroughness with which the court reasoned its sentence. There were more arguments than just the methamphetamine purity argument, and more arguments than just this family safety issue. It went into issues as far as Mr. Gaspar's having firearms and a large amount of drugs around children, despite his history as well. That sort of colloquy, coupled with the amount of the variant sentence, gives us an indication as to whether the court properly addressed the 3553A factors. And it did, as we've discussed. Such a variance gives us an indication. I don't think that if this were a guideline sentence, that that would change the analysis here. But my point is, giving such great credit and varying downward so much, and again, explicitly addressing that that was in part due to the threats to the appellant's safety, that shows that the district court was making just the type of analysis that this court has said that it ought to. Giving an indication that it considered the 3553A factors and applied them to this specific defendant. Your honors, if the court doesn't have any further questions, this concludes the government's argument. Your honors, I would maintain that if one were to read the district court's reasoning associated with the announcement of its sentence, from start to finish, you would never have any sense that coercion played any role in the court's analysis, factored in any way into the court's reasoning. You agree, don't you, that the test that the Supreme Court's given us is that we should consider all the arguments, the good faith arguments or the non-frivolous arguments, consider them such that we can review them on appeal, whether they were appropriate. And if you have a dialogue, a lengthy dialogue at sentencing, and you're going back and forth about a particular factor with counsel, and the judge says, well, I'll take that into account, and then when you get down to the end of the sentencing, he doesn't mention it, that shouldn't indict him, should it? There is a reason, Judge Niemeyer, that the courts have required some degree of specificity with respect to the district court's pronouncement of the factors on which it is basing its sentence, precisely so that this court can effectively conduct review. It's a highly discretionary process, and the idea is when we're reviewing discretion, we want to know what's going on in the courtroom. What are the factors the court is considering, and how is it applying them? And in this case, the two main ones, it seems to me, that the court was considering, and gave the downward variance was the ICE issue and the duress issue. And I do agree with that, Your Honor, which is, to me, is another way of saying the district court did not factor in the coercion issue. I'm treating coercion and duress as the same. Well, I mean, the idea is duress, he entered, coercion or duress, he entered into this conspiracy, arguably, according to him, in order to protect his family. Yes, yes. That was made from the beginning. It is in the pre-sentence report at some length. And you argued it. I have the page open here. It goes on for quite a while here. You make a detailed argument. And the question then is, how did the court treat it? I think the court is making my point, Your Honor, because while it was discussed at some length, and it was reflected in the pre-sentence report in great detail as counsel indicated in the acceptance of responsibility statement, the district court specifically prefaced its remarks about a great deal has been made about Mr. Gaspar's situation. But I have not heard anything about the societal harm that is associated with drug trafficking. And the court went on to recite a number of evils that are consequential to drug trafficking. The thing about that is that those are generic. They are certainly accurate. They are certainly true. Nobody is disputing their accuracy or their relevance to these proceedings. But what they don't do, what they don't do is address the core argument about the origin of drug trafficking. The origin of Mr. Gaspar's involvement with Moran. Origins, we contend, are important. As this court knows, pre-sentence reports routinely devote a great deal of time and space to the origins of the defendant. Because the idea is that how an individual, the circumstances under which a person was developed, have at least something to say about the individual that they subsequently became. The same is true with organizations. How this conspiracy, this relationship between Moran and Gaspar came about I think is critical to the district court's assessment. But the court does say, and I guess you can argue about what it is saying, but it seems to me in context, it's speaking to your point, it says here, I'm looking at 148. Now, Mr. Dusenbury, and let me go back just a minute. I do want you to know that as part of this reduction is due to what you shared with me at the bench. The court did take that into consideration. But I also took into consideration that he, his involvement with drugs, came long before the events that happened in 2022. So the court did take all of that into consideration. Now, that's a pretty comprehensive statement about the fairly lengthy discussion about the circumstances of his criminal conduct in this case. I guess you want, I'm not sure, I'm having a little difficulty understanding what you wanted the court to have done differently. I would, I understand that the, I'll answer the court's question. What I would have thought that the court would do and should have done is to give some specific indication as to whether and to what extent she credited the contention that coercion played a significant role. I think she said she's, in part, she is taking it into account. But she didn't take it into full account because she said there were other factors that countered that. But she did give a portion of her reduction, and her reduction was substantial. You agree? Oh, I certainly would agree. I certainly would agree. I mean, you got, you asked for $120, she gave $188, but she started at $324. And that's, you did a pretty good job. Well, thank you, Your Honor. But I think my point, as I see my time is running short, is that the fact that we have to speculate as to what the district court specifically was alluding to when she said I am part of this final reduction is attributable to what was discussed at the bench. What was discussed at the bench really had nothing, had to do with the, an attempt at cooperation, the district court's attempt at cooperation. It didn't bear fruit. It had very little to do, if anything, with how he. Explain the reason he didn't cooperate was this risk. Or you explain it. Well, I did explain that. I think the word you used is the risk. But the point I'm making now, Your Honor, is why he became involved in the first place. The idea being that had, but for the coercion, none of this, it's at least plausible to believe that none of this would have happened. That's my point. Thank you. Thank you. All right. We'll come down and greet counsel and proceed on to the last case.
judges: Paul V. Niemeyer, Allison J. Rushing, Toby J. Heytens